UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

W. PAUL MAYHUE, )
       Plaintiff, )
) No. 1:12-cv-398
-v- )
) HONORABLE PAUL L. MALONEY
CHERRY STREET SERVICES, INC., )
       Defendant. )
_____)

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

In this case, Plaintiff W. Paul Mayhue claims that his former employer, Touchstone Innovaré (now Cherry Street Services), discriminated against him on the basis of his age when Plaintiff was laid off and not re-hired in another position. His claims arise under the Age Discrimination in Employment Act (28 U.S.C. § 621) and Michigan's Elliott-Larsen Civil Rights Act (M.C.L. § 37.2202). Before the court is Defendant Cherry Street Services' motion for summary judgment (ECF No. 43).

For the reasons discussed below, the Court will grant Defendant's motion.

**I.    BACKGROUND**

In 1979, Mr. Mayhue began working for the organization that came to be known as Touchstone Innovaré and is now Cherry Street Services, Inc. ("Touchstone") as a social worker. (ECF No. 44 at 2, pg ID 229.) Cherry Street is a non-profit organization that provides services to mentally ill individuals and their families. (*Id.*) Mr. Mayhue worked for about 20 years as a case manager, a position that creates revenue for the agency through billable hours. (*Id.*) In 2000, Mr. Mayhue transferred to a position as a PATH Housing Specialist, locating housing for the homeless and mentally ill. (ECF No. 48 at 2, pg ID 386.) The PATH Specialist position was funded by a grant and does not bring in its own revenue. (ECF No. 44 at 2, pg ID 229.) In 2009, the grant was pulled

from Touchstone, but Mr. Mayhue became the Government Relations Coordinator. The president of Touchstone and the vice president of human resources warned Mr. Mayhue that the government relations position would only be available as long as Touchstone had surplus revenue to fund the position. (ECF No. 44-5, ¶ 13, pg ID 348.)

In 2010, due to changes in funding from Network 180, Kent County's community mental health authority, Touchstone determined that it had to lay off a number of employees whose positions did not generate revenue for Touchstone. (ECF No. 44 at 4, pg ID 231.) Four positions were eliminated, including Mr. Mayhue's, due to the 5% decrease in funding each year. (*Id.*) Mr. Mayhue was 63 years old at the time. (ECF No. 48 at 1, pg ID 385.) The other three employees, who were each younger than Mr. Mayhue, were laid off immediately. (ECF No. 44 at 4, pg ID 231.) While Mr. Mayhue was notified that his position was being eliminated due to lack of funding on December 15, 2010, Touchstone did not terminate his employment for a number of months. (*Id.*)

Mr. Mayhue asked if there were other positions available and he was invited to apply for open case manager positions. (*Id.* at 5, pg ID 232.) However, Mr. Mayhue was not interested in what he saw as a demotion, and he did not apply for those jobs. (*Id.*; ECF No. 48 at 2, page ID 386.) Again, Touchstone's then-President, Greg Dziadosz, offered Mr. Mayhue the opportunity to apply for four other vacant positions at a meeting in February 2011, but Mr. Mayhue did not apply. (ECF No. 44 at 5-6, pg ID 232-33.) Dziadosz also forwarded a job posting for a high-level program supervisor position to Mr. Mayhue, but Mr. Mayhue did not apply for that position either. (*Id.* at 6, page ID 233.)

When Dziadosz told Mr. Mayhue that the case managers were not billing very many hours a day, Mr. Mayhue volunteered to assess productivity at Touchstone. (ECF No. 48 at 3, pg ID 387.) Before he was given a position or authorized to do so, Mr. Mayhue sent out an email to the entire

2

staff of Touchstone asserting that he was in charge of productivity. (ECF No. 44 at 7, pg ID 234.) The email garnered much negative feedback, and Touchstone's leadership believed that Mr. Mayhue had destroyed his credibility and his ability to work with the staff. (*Id.*) Accordingly, they gave Mr. Mayhue a number of options: (1) take an open case manager position, (2) retire and collect a $3,200 bonus for years of service, (3) take the layoff and collect unemployment benefits, or (4) terminate employment but act as an independent contractor for specific projects. (ECF No. 44-1 at 6-7, pg ID 256-57.) Mr. Mayhue never chose an option, forcing Dziadosz to formally lay Mr. Mayhue off effective March 31, 2011. (ECF No. 44 at 9, pg ID 236.)

Touchstone's layoff policy gave former employees a guaranteed interview for any position for which they apply at the agency for the next year. (*Id.*) Mr. Mayhue never applied or interviewed for any other position, even though Dziadosz attached a list of 6.5 open positions to the layoff letter. (*Id.* at 10, pg ID 237.) Mr. Mayhue claims that he did not apply for any other position because Dziadosz told him he should not bother doing so because there were not any positions that would work for Mr. Mayhue. (ECF No. 48 at 4, pg ID 388.) Touchstone never created a productivity manager position and did not hire anyone else to work as a government relations coordinator. (*Id.*)

On April 4, 2012, Mr. Mayhue filed suit against Touchstone in this court. (ECF No. 1.) He raises two claims: (1) violation of the Age Discrimination in Employment Act ("ADEA"); and (2) age discrimination under Michigan's Elliott–Larsen Civil Rights Act.

## II. LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party

to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.  ANALYSIS

Mr. Mayhue claims that Touchstone Innovaré discriminated against him first in discharging him and then in refusing to re-hire him for vacant positions, hiring younger workers instead.

### A.  ADEA Claim - Age Discrimination in Termination

The Age Discrimination in Employment Act prohibits employers from firing, laying off, or refusing to hire, an employee "because of [his] age." 29 U.S.C. § 623(a). A plaintiff can prove a violation of the ADEA in two ways. First, he could show direct evidence of discrimination—that is, evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The plaintiff must prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employer decision. *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009)).

If there is no direct evidence of discrimination, however, the plaintiff must use circumstantial

4

evidence to establish his case. *Id.* at 620. Here, the courts apply the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff must first establish a prima facie case by showing (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by a younger employee. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). If the plaintiff was terminated due to a work force reduction or was not replaced, he must satisfy the fourth requirement by pointing to "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)). Once the plaintiff establishes his prima facie case, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for its actions. *Ercegovich*, 154 F.3d at 350. The burden then shifts back to the plaintiff, who must show that the defendant's claimed reason is "a mere pretext for intentional age discrimination." *Id.*

Here, Mr. Mayhue argues that there is direct evidence of age discrimination because an email from then-Touchstone president Dziadosz to the vice president of human resources on February 24, 2011 states that Mr. Mayhue would be eligible for retirement and a bonus since he was over the age of 62. (ECF No. 48-3, pg ID 421.) Mr. Mayhue argues essentially that mentioning both a person's age and retirement in the same breath is direct evidence of age discrimination, citing *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323 (6th Cir. 2012). In *Hale,* the terminated employee's immediate supervisor stated: "He is going to leave here when he is 62. I am going to see to it. He has been here long enough, and he is going to go on his social security." *Hale*, 503 F. App'x at 331. The Sixth Circuit affirmed that such a statement is direct evidence of age discrimination, because the manager's statement "unequivocally links Hale's age to her decision to terminate him," and "her

5

decision was based not on an age-correlated factor but on age itself." However, the court also held that merely inquiring into when an employee would retire or asking if he had thought about retirement in light of an upcoming birthday are not direct evidence of age-related animosity. It held that

> [Supervisor] Laney's inquiries into Hale's retirement plans are not direct evidence of age discrimination because they do not require the conclusion that Hale was terminated because of his age. While such inquiries could make up circumstantial evidence that, in connection with other evidence, allow an inference that Laney terminated Hale because of his age, these inquires do not "prove[ ] the existence of a fact without requiring any inferences," *Rowan,* 360 F.3d at 548, and thus cannot be direct evidence.

*Id. See also Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (holding that the statement "Why don't you retire and make everybody happy" was not direct evidence of age discrimination).

In this case, the mere statement that Mr. Mayhue was eligible for retirement benefits falls quite short of providing direct evidence of age discrimination. The email was sent a number of months *after* Touchstone made the decision to terminate the government relations coordinator position, and merely discusses one of Mr. Mayhue's options, given that his position at Touchstone no longer existed and he refused to apply for other positions. The email at issue here lacks the age-based animosity evident in *Hale* and does not require the conclusion that he was terminated because of his age. The mention of Mr. Mayhue's retirement eligibility requires inferences to suggest discrimination and is at most circumstantial evidence.

Plaintiff's remaining argument is that circumstantial evidence supports a finding of age discrimination concerning his termination under the *McDonnell-Douglas* burden-shifting analysis.

    1.    *Prima Facie Case*

The parties do not dispute the first three elements of Mr. Mayhue's prima facie case. They agree that Mr. Mayhue is a member of a protected class, that his layoff was an adverse employment

action, and that he was qualified for his position. They do dispute the fourth element of the prima facie case, which requires proof that the employee was replaced with a younger employee, or additional evidence of discrimination if the layoff was part of a work force reduction. *Geiger*, 579 F.3d at 622-23. The Sixth Circuit has explained that:

> [a] work force reduction occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. A person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties. A person is not considered replaced when his duties are redistributed among other existing employees already performing related work.

*Id.* at 623 (citations omitted).

Mr. Mayhue was laid off as part of a work force reduction. He was part of a group of four employees whose positions were cut due to decreases in funding, and current and former Touchstone employees have testified that he was not replaced by a new employee and no one was reassigned to perform his duties. (ECF No. 44-1 at 8, pg ID 258; ECF No. 44-5 at 7, pg ID 351.) Plaintiff argues that "it defies credibility" that Touchstone did not hire someone to increase productivity after it let Mr. Mayhue go, given the low number of billable hours case managers were earning. This bare statement is not enough to stave off summary judgment. Mr. Mayhue has submitted no evidence beyond his own speculation to support his assertion that Touchstone hired someone to replace him rather than redistributing the productivity analysis to others who preformed related work. At the summary judgment stage, there must be sufficient evidence favoring the nonmoving party so that a jury could return a verdict in his favor. *Anderson,* 477 U.S. at 249-50. Evidence that is merely colorable or not significantly probative falls short of preventing summary judgment. *Id.* at 250. Mr. Mayhue admitted that he has no evidence that he was replaced by someone else (ECF No. 44-3 at 31, pg ID 319), and thus he has not presented sufficient evidence to suggest a jury could find in his favor.

Accordingly, Mr. Mayhue was laid off as part of a work force reduction, and he has a higher burden to show "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Rowan,* 360 F.3d at 547. This Court cannot find any such additional evidence on this record. There are no allegations that anyone expressed hostility toward Mr. Mayhue or older employees in general. Mr. Mayhue does not know of anyone who was treated differently at Touchstone because they were younger. (ECF No. 44-3 at 34, pg ID 322.) The circumstances surrounding Mr. Mayhue's layoff were not suspicious and did not suggest discriminatory animus. Rather, Touchstone tried very hard to keep Mr. Mayhue working for them in a position that was not losing its funding, but Mr. Mayhue declined to apply for any position. Evidence that Touchstone has hired younger employees for positions Mr. Mayhue was capable of performing (but he did not apply for) is also insufficient to meet this heightened standard. *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 266–67 (6th Cir. 2010).

None of Mr. Mayhue's arguments tend to show that Touchstone discriminated against him. The Court finds that he has not proven a prima facie case of age discrimination, so his claim fails.

### 2. *Legitimate, Nondiscriminatory Reason*

Even if Mr. Mayhue had established a prima facie case, however, Touchstone has put forward a legitimate, nondiscriminatory reason for terminating him. It states that it reduced its workforce because of a drop in funding from Network 180, the county mental health authority. Touchstone explained that Network 180 changed from paying a flat rate each month to only paying for documented meetings that lasted 15 minutes or more, which caused a 5% drop in revenue in 2009 and again in 2010. (ECF No. 44 at 3-4, pg ID 230-31.) Touchstone decided that it no longer had the discretionary funds to continue paying Mr. Mayhue to serve as a government relations coordinator, and it laid off four employees whose jobs did not directly earn income so that it could balance its budget. (*Id.* at 4, pg ID 231.)

### 3. Pretext

"In order to establish that an employer's legitimate non-discriminatory reason is pretext, a plaintiff is required to show that the proffered reason had no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action." *Lockett v. Marsh USA, Inc.,* 354 F. App'x 984, 995 (6th Cir. 2009) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). Mr. Mayhue claims that Touchstone's reason for terminating him had no basis in fact. He claims that Touchstone's budget reasoning was spurious because Plaintiff was told first that there was no money for his position, then Touchstone appeared to have the funds to support him as a productivity manager, and then Mr. Mayhue was laid off when he could not increase productivity. He argues that Touchstone continues to hire others, and that it has sufficient discretionary funds to support Mr. Mayhue's position. Finally, he argues that there is no correlation between the three employees who were laid off in early 2010 and his own termination because of the time between the layoffs, so Touchstone's decision to lay him off was arbitrary. (*See generally* ECF No. 7 at 3, pg ID 14; ECF No. 48 at 6, pg ID 390.) However, in his deposition Mr. Mayhue admitted that he has no evidence to dispute that his position was eliminated because of budget concerns. (ECF No. 44-2 at 48-49, pg ID 279-80.)

To show pretext, a plaintiff must "produc[e] 'sufficient evidence from which the jury may reasonably reject the employer's explanation.'"*Oil, Chem. & Atomic Workers Int'l Union, Local 7-629, AFL-CIO v. RMI Titanium Co.*, 199 F.3d 881, 889 (6th Cir. 2000). This is not a high standard, and where the dispute is simply the employer's word against the employee's, a bare argument may be enough to meet it. However, here Touchstone has presented sworn statements supporting its claim, and it has explained how its funding changed and why that impacted Mr. Mayhue's non-essential and non-revenue-generating job. Touchstone's obvious willingness to continue to employ Mr. Mayhue in a revenue-generating job refutes his argument

9

that Touchstone's actions were a ruse to get rid of him because of his age. That Touchstone continues to hire others in jobs that *are* supported by funding or are revenue generating is irrelevant to Mr. Mayhue's claim, especially given that Mr. Mayhue never applied for any of those positions. Finally, the delay in Mr. Mayhue's termination after his position was cut demonstrates Touchstone's efforts to keep him employed in a funded position, not discrimination or ill-will based on age. Mr. Mayhue has presented no evidence to disprove the reduction in funding or the existence of budgetary problems at Touchstone.

Thus, even if a jury were to take the evidence and arguments in the light most favorable to Mr. Mayhue, it would search in vain for a response to Touchstone. In short, Mr. Mayhue has not given the jury any basis, let alone a reasonable one, to reject Touchstone's claimed legitimate, nondiscriminatory reason for laying off Mr. Mayhue. He has therefore not satisfied the pretext element of the burden-shifting test.

For these reasons, Mr. Mayhue's claim of age discrimination based on being laid off fails.

### B. ADEA Claim - Age Discrimination for Failure to Hire

To state a prima facie case of discrimination for failure to hire, a plaintiff must show that "(1) he was a member of a protected class; (2) he applied and was qualified for the position in question; (3) he was considered and denied the position; and (4) he was rejected in favor of a substantially younger person with similar qualifications." *Pucci v. Basf Corp.*, 55 F. App'x 243, 245 (6th Cir. 2002) (*citing Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1095 (6th Cir.1996)). It is well established in the record that Mr. Mayhue never applied for another position at Touchstone before or after his termination, despite much encouragement and ample opportunities to apply for other open positions and the right to interview for any position for which he applied. (ECF No. 44-2 at 53, 162-63, 182, pg IDs 283, 317-18, 321; ECF No. 44-1 at

10

9, pg ID 258; ECF No. 44-5 at 6, pg ID 350.) Because he never applied, he was never considered or rejected in favor of a younger employee. Accordingly, Mr. Mayhue cannot satisfy the second, third, or fourth prongs of the prima facie case and his claim fails.

## C. State Claim

As a general matter, Michigan courts follow federal law when reviewing claims of age discrimination under the Elliott–Larsen Civil Rights Act. *See, e.g.*, *Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993). The law governing this claim mirrors that governing the ADEA claims discussed above. The Court will therefore dismiss this claim on the same grounds.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Mr. Mayhue has not shown a genuine dispute of material fact regarding any of his claims. It will therefore grant Cherry Street Services' motion and dismiss this matter in its entirety.

## ORDER

The Court hereby **GRANTS** Defendant's motion for summary judgment (ECF No. 43). Plaintiff's complaint is hereby **DISMISSED**. Judgment will issue consistent with this order.

**IT IS SO ORDERED.**

Date: October 16, 2013              /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge